UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

YUSEF LATEEF PHILLIPS,

              Plaintiff,

v.

KENT COUNTY et al.,

              Defendants.

_____/

Case No. 1:19-cv-331

Honorable Janet T. Neff

**OPINION**

This is a civil rights action brought by a federal prisoner under 42 U.S.C. § 1983 and state law. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Kent County and Lawrence Stelma.

**Discussion**

I.      Factual Allegations

Plaintiff Yusef Lateef Phillips is presently incarcerated with the Federal Bureau of Prisons at the Otisville Federal Correctional Institution in Otisville, New York. Plaintiff sues Kent

County and the following employees of Kent County: Sheriff Lawrence Stelma and Deputy Sheriff Andrew Hinds.

Plaintiff alleges that on the evening of September 3, 2017, he was walking to his car from an apartment at Burton's Landing Apartments in Grand Rapids, Michigan. He was not aware that federal authorities were executing a search warrant at that location and were hidden in the shadows nearby. Plaintiff was unarmed and his hands were in plain view. In one hand, he was holding his car keys. Suddenly and without warning, Defendant Hinds, who was assisting the federal officers, shot Plaintiff in the chest with a rifle. Plaintiff fell to the ground, in extreme pain and bleeding "profusely" from a hole in his chest. (Compl., ECF No. 1, PageID.4.) Officers handcuffed him and left him on the ground until an ambulance arrived and took him to the hospital.

Apparently, a state prosecutor investigated the shooting, determined that Hinds' belief that Plaintiff posed a threat was "clearly wrong," but decided not to prosecute Hinds for a crime. (*Id.*)

Plaintiff survived the gunshot wound and is now serving a prison sentence for possession of a firearm in furtherance of drug trafficking, and conspiracy to possess with intent to distribute and to distribute heroin, cocaine, and marijuana. *See United States v. Phillips*, No. 1:17-cr-193-02 (W.D. Mich.).

Plaintiff claims that Defendants are liable under 42 U.S.C. § 1983 because they used excessive force or were deliberately indifferent to his safety, in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution. He also claims that Defendants, particularly Defendants Kent County and Sheriff Stelma, are liable because they failed to adequately train and supervise deputies working for Kent County. He asserts that Kent County and Sheriff Stelma were aware of other incidents of excessive force by Kent County sheriff's

deputies during searches and arrests, yet they failed to adequately train and supervise their employees. In addition, Defendants allegedly failed to enact policies and procedures that would ensure adequate training in the use of firearms, and to investigate and discipline officers who do not abide by county policies.

Plaintiff further contends that Defendants are liable under state law because they owed Plaintiff a duty of due care, but they were negligent, grossly negligent, and/or recklessly indifferent to his safety.

As relief, Plaintiff seeks $10 million in compensatory and punitive damages, as well as interest, costs, and attorney fees, under 42 U.S.C. § 1988.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Kent County

Plaintiff sues Kent County. A local government entity such as a municipality or county "cannot be held liable [under § 1983] solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, an entity like Kent County may only be liable under § 1983 when its policy or custom causes the injury. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal-liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy or custom, connect it to the government entity and show that the particular injury was incurred because of the execution of that policy or custom. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,*

330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-09. This requirement is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

Plaintiff's claim fails at this first step because his allegations have not identified a policy or custom of Kent County. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the county. *Monell*, 436 U.S. at 690. Plaintiff does not allege that there is or was an official policy promoting the use of lethal force in the circumstances alleged in the complaint, or that Defendant Hinds was acting according to such a policy when he shot Plaintiff.

Moreover, Plaintiff has not identified a custom as the source of his injuries. The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).

Plaintiff's closest allegations pertaining to a custom are his assertions that Defendants Kent County and Stelma were aware of "previous incidents where individuals who were contacted by Kent County Sheriff Deputies were subjected to excessive force during search and arrest," and were aware of the "custom and practice of deputies that failed to ensure against the use of excessive force during arrests, which were similar to the actions of Defendant [Hinds]." (Compl., PageID.9.) These allegations are too vague and conclusory to state a claim. Plaintiff does not describe the previous incidents or allege any connection between them and the incident on September 3, 2017. Even if there were "previous incidents" of "excessive" force by county

5

officers, such incidents would not necessarily mean that the Defendants had established a custom of using *lethal* force in searches and arrests, or that Defendant Hinds was acting according to that custom when he shot Plaintiff. Moreover, Plaintiff does not allege what it means to "fail to ensure against the use of excessive force," or how that failure applies to the facts of his case.

Plaintiff also contends that Defendants Kent County and Stelma failed to train their deputies. For instance, he alleges that they failed to "properly train deputies in the evaluation of when deadly force is to be applied," failed to "train [their] deputies in the proper use of force and constitutional limits on the use of deadly force," failed to maintain "proper policies and procedures and training to deal with the inherently and unusually dangerous activity of executing nighttime high-risk warrant service with federal agents," and failed to "properly promulgate guidelines and policies that comply with . . . the requirements of 42 U.S.C. § 1983 regarding the use of force during arrests and searches[.]" (Compl., PageID.7-10.)

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. However, a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). A municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, unless the "consequences of failing to train could be so patently obvious that a [government entity] could be liable under § 1983 without proof of a pre-

6

existing pattern of violations." *Connick*, 563 U.S. at 64 (discussing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff has not identified a pattern of similar constitutional violations by deputies working for Kent County. Nor has he identified a specific deficiency in the county's training program where the consequences of that deficiency would be patently obvious. His allegations boil down to a nebulous assertion that the county's training was not "proper." This is not sufficient to state a claim. *Cf. Brown v. Cuyahoga Cty.*, 517 F. App'x 431, 436 (6th Cir. 2013) (affirming dismissal of claim that county "fail[ed] to properly train its police officers in proper conduct toward its citizens, [and] in permitting the excessive use of force" because these allegations were "nothing more than a bare recitation of legal standards").

Moreover, Plaintiff does not connect any of the alleged deficiencies in training to the incident at issue. In effect, Plaintiff infers that, because an officer used lethal force on him on one particular occasion, the county's training practices and procedures were inadequate. That is not a plausible inference to make. *See City of Canton*, 489 U.S. at 391 ("[P]lainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [government entity] liable.").

Plaintiff alleges a number of other failures by the county that are not plausibly related to his claim. For instance, he contends that the county failed to "staff the Sheriff's Department with competent law officers," failed to "monitor [its] deputies to ensure that they are competent for . . . high-risk activities," failed to "require that deputies assigned to [high-risk] activities and armed with high powered rifles meet significantly higher qualifications than deputies assigned to more [menial] tasks," and "failed to fully investigate and discipline its deputies who do not abide by its policies and procedures relative to the improper use of force." (Compl.,

PageID.10.) To the extent any of these failures could be described as a "custom" of the county, Plaintiff does not allege any facts indicating that they contributed to his injury.

In short, Plaintiff's vague and conclusory allegations about the county's failures do not contain enough factual matter to infer more than the "mere possibility of misconduct" by Kent County. *See Iqbal*, 556 U.S. at 679. Thus, Plaintiff fails to state a claim under § 1983 against Kent County.

### B. Sheriff Stelma

Plaintiff's § 1983 claim against Defendant Stelma suffers from similar deficiencies. Just as a municipal entity is not automatically liable for the conduct of its employees, individual government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior by the defendant. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Stelma engaged in any active unconstitutional behavior.

Plaintiff does not allege that Stelma was involved in the shooting, was present at the scene after Plaintiff was shot, or in any way ratified or approved the conduct of Hinds. Nor does Plaintiff plausibly allege that Stelma is responsible for a particular policy or custom leading to Plaintiff's injuries. Thus, Plaintiff does not state a claim under § 1983 against Defendant Stelma.

8

**C. Defendant Hinds**

Upon initial review, the Court concludes that Plaintiff states a claim under § 1983 against Defendant Hinds. At the very least, Plaintiff states a claim that Hinds used excessive force in violation of Plaintiff's rights under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person.").

III.     State Law Claims

As discussed above, Plaintiff does not state a claim under § 1983 against Defendants Kent County and Stelma. This is his only federal claim against these defendants.[1] His remaining claims against them arise under state law. Plaintiff does not allege that his state citizenship is different from Defendants for purposes of diversity jurisdiction. Thus, the Court has jurisdiction over his state-law claims only by way of supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). When considering whether to retain supplemental jurisdiction over state-law claims, the Court must consider factors such as judicial economy, convenience, fairness, comity, and needlessly deciding state law issues. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). Considering the relevant factors and

---

[1] Plaintiff also cites 42 U.S.C. § 1988, but that statute does not for provide an independent cause of action. *See Moore v. Alameda Cty.*, 411 U.S. 693, 705 (1973) (noting that § 1988 "was obviously intended to do nothing more than to explain the source of law to be applied in actions brought to enforce the substantive provisions of the [Civil Rights Act of 1866]"); *Monell*, 436 U.S. at 701 n.66 ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one[.]").

circumstances, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendants Kent County and Stelma.

Although Plaintiff's claims against all Defendants all arise from the same incident, his theory of liability against Kent County and Defendant Stelma is different from his theory of liability against Defendant Hinds, and his claims against these respective parties will likely involve different evidence and require a different showing of proof. A jury is less likely to be confused if it is considering the alleged negligence of Sheriff Stelma and Kent County separate and apart from the use of force by Defendant Hinds. Furthermore, the complaint has not been served on the parties, so in terms of judicial economy and fairness to the parties, there is little chance of duplicated effort if Plaintiff proceeds with a claim against Defendants Stelma and Kent County in state court. Finally, as a matter of comity, the state court is in the best position to consider the liability of Defendants Kent County and Stelma under state law. For all these reasons, Plaintiff's state-law claims against Kent County and Sheriff Stelma will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kent County and Lawrence Stelma will be dismissed. Plaintiff's federal claims against them under 42 U.S.C. § 1983 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court will also dismiss Plaintiff's state-law claims against them, because the Court declines to exercise supplemental jurisdiction over such claims. Plaintiff's claims against Defendant Andrew Hinds remain in the case.

An order consistent with this opinion will be entered.


Dated:   June 6, 2019                          /s/ Janet T. Neff
                                               Janet T. Neff
                                               United States District Judge