UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YUSEF LATEEF PHILLIPS,

    Plaintiff,

v.

                                     Case No. 1:19-cv-331

ANDREW HINDS,                        Hon. Hala Y. Jarbou

    Defendant.
_____/

## ORDER

In September 2017, Defendant Andrew Hinds was a Deputy with the Kent County Sheriff's Department (KCSD) and a member of KCSD's Tactical Apprehension and Confrontation Team (TAC Team). In the early hours of September 3, the TAC Team carried out an arrest of Plaintiff Yusef Phillips and his brother Ray Lee. Hinds shot Phillips, who was unarmed, during the arrest. Phillips brought the present action under 42 U.S.C. § 1983, alleging unjustified use of deadly force by Hinds in violation of the Fourth Amendment.

Hinds moved for summary judgment, asserting qualified immunity. (ECF No. 106.) The matter was referred to a magistrate judge, who produced a Report and Recommendation (R&R) that the Court deny Hind's motion. (ECF No. 128.) Hinds timely objected to the R&R (ECF No. 140) and Phillips responded (ECF No. 141-1).[1] The Court will deny Hinds's objections, adopt the R&R, and deny Hinds's motion for summary judgment.

### I. BACKGROUND

Phillips and Lee were involved in a multistate organization that trafficked heroin and cocaine. (R&R 2.) They were the highest-ranking members in the Grand Rapids, Michigan, area.

---

[1] Phillips missed the deadline to respond to Hinds's objections but moved for leave to file his response two days late. (ECF No. 141.) The Court will grant that motion and consider Phillips's response to Hinds's objections.

(*Id.*)  They were also being investigated by the federal Drug Enforcement Agency (DEA).  The DEA learned that Phillips and Lee were going to meet a truck containing a large shipment of narcotics in the early hours of September 3.  The DEA enlisted the help of the TAC Team, who were forewarned that Phillips and Lee were high-ranking members, had extensive criminal histories, and that they would likely be armed when picking up the drugs.  (*Id.* at 2-3.)

The plan was to arrest Phillips and Lee somewhere between their apartment and their cars, "far away enough from the entrance that the suspects could not re-enter and barricade themselves inside the [apartment] building, but not far enough away that they could get into their vehicles." (*Id.* at 3.)  The TAC Team divided into three teams; Hinds was assigned to Team 2.  They got into position and waited.

Around 4:00 AM, Phillips and Lee left the apartment building.  (*Id.* at 4.)  They walked ten to fifteen feet down a dimly lit sidewalk before Hinds approached them from behind.  "Hinds was wearing a helmet and a tactical uniform bearing the word 'Sheriff.'" (*Id.*)  The next few seconds are contested.

Hinds says he got about ten to fifteen yards from Phillips and Lee before "loudly" commanding "police, get on the ground." (*Id.*)  He gave no other directives, and did not hear any from his fellow officers, either.  (*Id.*)  Hinds says Phillips "'crouched, made a quick movement toward his waistband and [then made] an upward movement towards [Hinds's] team, which led [Hinds] to believe that [Phillips] was armed.'" (*Id.* at 5 (quoting Hinds Dep., ECF No. 107-1, PageID.548).)  Phillips used his right hand for this "upward movement."  Hinds does not remember seeing anything in Phillips's hand.  (*Id.*)  "Hinds fired one shot from his AR-15 rifle into Phillips's chest." (*Id.*)

2

Phillips states that he did not hear anyone tell him to get on the ground and was not aware of any police presence. He was walking down the sidewalk having a conversation with Lee when he heard "'some commotion'" behind him. (*Id.* (quoting Phillips Dep., ECF No. 110-3, PageID.1128).) It was coming from his back and to the right. "As soon as Phillips stopped and looked to see what was causing the commotion, he found himself 'on the ground in pain.'" (*Id.* at 6 (quoting Phillips Dep., PageID.1128-1129).) He later realized that he had been shot. Phillips is "certain" that his hands were at his side when he was shot. (*Id.* (quoting Phillips Dep., PageID.1130-1131).) He denies doing anything with his hands or reaching for his waistband in the moments leading up to the shooting. Phillips also notes that he is left-handed, so if he had been holding anything, he likely would have been holding it with his left hand.

There is video footage of the incident. It shows that Phillips left the apartment building at 3:59:47 AM, with the shooting occurring at 3:59:57. (*Id.* at 8.) Other than giving a sense of time—the entire incident unfolded in the span of ten seconds—the video reveals little. Given the poor lighting, poor video quality, and a car obstructing view of Phillips at the crucial moment, it is impossible to tell whether Phillips was holding anything or reached from his waistline when he was shot. (*Id.* at 7.) At 3:59:57, right before Phillips is shot, it is not clear if he is "crouching," as Hinds contends, or if his position is lower because he simply stepped off the curb. (*Id.* at 8.)

## II. STANDARDS

### A. Objections to R&Rs

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct *de novo* review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject,

3

or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### B. Qualified Immunity

Government officials are immune to civil suits for damages resulting from discretionary official actions unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" (R&R 10 (quoting *District of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018)).) "A legal principle is clearly established if it has 'a sufficiently clear foundation in then-existing precedent.'" (*Id.* at 11 (quoting *Wesby*, 138 S. Ct. at 589).) "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. The principle "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### III. OBJECTIONS

The R&R recommends denying Hinds's motion for summary judgment because there is a genuine dispute whether Plaintiff did anything to give Hinds probable cause to use lethal force, and because it was clearly established in 2017 that use of deadly force without probable cause violates the Fourth Amendment. Hinds makes five objections.

### A. First Objection

Hinds argues that the R&R "improperly relied upon what [Phillips] purportedly intended, knew, and perceived." (Def.'s Objs. 3.) Instead, analysis must be based on what Hinds knew at

the time. *Krause v. Jones*, 765 F.3d 675, 681 (6th Cir. 2014); *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 155 (6th Cir. 2013) (Plaintiff's "uncommunicated intent" had no bearing on reasonableness of deadly force). From his perspective, Hinds says, "he was facing an imminent threat of bodily harm[.]" (Def.'s Objs. 3.)

Hinds erroneously conflates perceptions and intent with actions. He is correct that the former matters are irrelevant here. What is highly relevant, however, is whether Phillips crouched, made furtive movements indicative of drawing a weapon, and had "an indiscernible dark object in his hand." (*Id.* (citation and internal quotation marks omitted).) Phillips denies these things. The video footage does not indicate which account of events is correct. The R&R found a genuine dispute, not based on what Phillips did or did not perceive or intend, but based on what he says he did or did not *do*.

Moreover, the testimony about "an indiscernible dark object" comes from another officer; Hinds himself says that he does not recall seeing anything in Phillips's hand. The Court will not impute other officers' observations or knowledge to Hinds where he expressly disclaims such observations and knowledge. *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (Fourth Amendment inquiry "is an objective one, considered from the perspective of a hypothetical reasonable officer in the defendant's position and with his knowledge at the time") (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). There is a dispute about whether Hinds saw or even could have seen something in Phillips's hand at the time he shot Phillips. The R&R correctly accounted for Hinds's personal knowledge in analyzing the issues. This objection is denied.

### B. Second Objection

Next, Hinds contends the R&R improperly viewed the incident in hindsight, once it was clear that Phillips was in fact unarmed. Given his background knowledge on Phillips, his training, and perceived furtive movements, Hinds claims that "the only reasonable conclusion was that

5

[Phillips] had a gun which he was drawing." (Def.'s Objs. 5.) That is not the only reasonable conclusion here, particularly where it is disputed whether Phillips made any kind of furtive movement at all. Deciding whether an objectively reasonable officer would use deadly force here would require the Court to make an impermissible determination of fact: whether Phillips made furtive movements. This objection is denied.

### C. Third Objection

Hinds argues that whether he saw Phillips holding something is immaterial because he should not have to wait to actually see a gun before using deadly force. However, this argument rests on the furtive movements Phillips purportedly made. Again, whether Phillips made a furtive movement is a disputed question of fact. This objection is denied for the same reason as the last objection. Hinds cannot simply declare that he "perceived a furtive movement" and receive qualified immunity. (Def.'s Objs. 6.) There must be undisputed evidence about something Phillips *did* to justify that perception. There is no such undisputed evidence here.

### D. Fourth Objection

Hinds contends that the R&R failed to properly consider an expert's testimony that Hinds "acted precisely according to standard police training and practices." (*Id.*) He says this is relevant because "objective reasonableness is the standard to which officers are trained." (*Id.* at 6 n.2.) As Phillips succinctly puts it: "[Hinds] asks the Court to defer to the opinions of its expert and conclude that [Hinds] acted reasonably." (Pl.'s Resp. 6, ECF No. 141-1.) Though police training and practices may be relevant, they cannot overcome the material factual disputes in this case. And to say something is reasonable because it conforms to standard police practice puts the cart before the horse. This objection is denied.

**E. Fifth Objection**

Finally, Hinds argues that, even if his conduct was unconstitutional, it was not clearly established as such on September 3, 2017. "[I]t is axiomatic that individuals have a clearly established right not to be shot absent 'probable cause to believe that [they] pose[] a threat of serious physical harm, either to the officer or to others.'" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985))). Disregarding disputed material facts, here is the information Hinds had to act on when he shot Phillips: (1) Phillips was expected to be armed; (2) Phillips disobeyed a command to get on the ground; and (3) Phillips turned towards Hinds.

A noncompliant suspect may not be shot unless he poses a sufficient threat. "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Garner*, 471 U.S. at 11. And, per the R&R, "the Supreme Court has recognized that there are obvious cases in which a law enforcement officer would be on notice that certain conduct violates the constitution, based on the Court's more generalized rulings regarding constitutional standards, despite an absence of a case with materially similar facts." (R&R 17 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).) "[S]ome cases can be so obvious under *Garner* and governing circuit precedent that officers should be presumed to have been aware that their conduct violated constitutional standards." *Bouggess v. Mattingly*, 482 F.3d 886, 895 (6th Cir. 2007).

Based solely on the undisputed facts in the record, this is one such obvious case. If a jury resolved these disputes in Phillips's favor, the constitutional violation would be beyond debate. After a single disobeyed command, an officer cannot shoot a suspect for simply turning in his direction. This final objection is denied.

7

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to file a response to Defendant's objections to the R&R (ECF No. 141) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's objections to the R&R (ECF No. 140) are **DENIED**.

**IT IS FURTHER ORDERED** that the R&R (ECF No. 128) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment on the basis of qualified immunity (ECF No. 106) is **DENIED**.

Dated:  September 21, 2021                    /s/ Hala Y. Jarbou
                                                            HALA Y. JARBOU
                                                            UNITED STATES DISTRICT JUDGE